DECISION ON OBJECTION TO THE MAGISTRATE'S DECISION
{¶ 1} Relator, Cavin J. Lambert, has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order denying him permanent total disability ("PTD") compensation and to enter an order granting said compensation.
 {¶ 2} The matter was referred to a magistrate of this court pursuant to Civ.R. 53(C) and Loc.R. 12(M) of the Tenth District Court of Appeals. The magistrate issued a decision, including findings of fact and conclusions of law. (Attached as Appendix A.) In her decision, the magistrate recommended that this court deny the requested writ of mandamus. The magistrate determined that the commission did not abuse its discretion in denying PTD compensation. Relator has filed an objection to the magistrate's decision, and the matter is now before this court for a full independent review.
 {¶ 3} By his objection to the magistrate's decision, relator objects to the magistrate's findings that: (1) the employability assessment report of Mark A. Pinti was "some evidence" upon which the commission could rely in denying relator's PTD application; and (2) the denial of relator's request to depose Mr. Pinti was not an abuse of discretion. (See relator's objection, at 1.)
 {¶ 4} Relator contends that the magistrate's decision and the commission's order denying PTD were not supported by law. He argues that the decision and order did not comply with State exrel. Wallace v. Indus. Comm. (1979), 57 Ohio St.2d 55. According to relator, Mr. Pinti's report was defective. In support of his argument, relator asserts the following: "Although the commission has argued that the Wallace standard only applies to medical reviews and not vocational reviews, this is clearly a distinction without substance. The evidentiary standard was expressly developed to ensure the evidentiary reliability of the report and the opinions expressed therein." (Relator's objection, at 2.)
 {¶ 5} Relator's reliance on Wallace as support for his contention that Mr. Pinti's report was defective is misplaced. InWallace, the Supreme Court of Ohio held that a non-examining physician must expressly accept all factual findings of all examining physicians.[1] In State ex rel. Baker v. YellowCab Co., Franklin App. No. 02AP-444, 2003-Ohio-1104, at ¶ 82, this court stated that "[t]he courts have never held theWallace rule to be applicable to the reports of vocational experts." Consequently, we find relator's argument that Mr. Pinti's report was defective under the Wallace rule to be unpersuasive.
 {¶ 6} Relator has argued that the commission abused its discretion when it denied relator's request to take the deposition of Mr. Pinti. Relator contends that the defective report of Mr. Pinti could have been "cured by deposition." This presumes a defect in Mr. Pinti's report. However, we agree with the magistrate and find that Mr. Pinti's report is not defective as a matter of law. Furthermore, we observe that relator requested to take the deposition of Mr. Pinti on the basis that "[t]here is a substantial disparity between the findings of [Mr.] Pinti and the documents already a part of the claim file." (Relator's Sept. 3, 2002 motion.) The commission denied relator's motion to take Mr. Pinti's deposition "pursuant to Pate." (Nov. 15, 2002 commission order.)
 {¶ 7} The Supreme Court of Ohio, in State ex rel. Pate v.Indus. Comm., 97 Ohio St.3d 89, 2002-Ohio-5444, at ¶ 13, determined that the commission did not abuse its discretion in denying the claimant's request to depose a physician, because the disparity between the opinions of the medical experts was "capable of resolution through a hearing where the commission may accept or reject [the physician's] report as persuasiveness dictates." Here, as noted by the magistrate, the hearing on relator's application for PTD compensation provided the parties an opportunity to debate the alleged disparity. Based on the foregoing, we conclude that the magistrate correctly determined that the commission did not abuse its discretion when it denied relator's request to take the deposition of Mr. Pinti.
 {¶ 8} Upon our independent review of the record, we find that the magistrate has properly discerned the pertinent facts and applied the relevant law to those facts. Relator's objection to the magistrate's decision is without merit and is accordingly overruled. Pursuant to Civ.R. 53(E)(4)(b), we adopt the magistrate's decision as our own, including the findings of fact and conclusions of law contained therein. In accordance with the magistrate's decision, we hereby deny the requested writ of mandamus.
Objection overruled; writ denied.
Lazarus, P.J., and Sadler, J., concur.
 APPENDIX A IN THE COURT OF APPEALS OF OHIO TENTH APPELLATE DISTRICT
State of Ohio ex rel. : Cavin J. Lambert, : Relator, : v. : No. 03AP-1105 Pike County Community Action Agency, : (REGULAR CALENDAR) National On Site Personnel Service and : Industrial Commission of Ohio, : Respondents. :
 MAGISTRATE'S DECISION Rendered on April 13, 2004 James A. Whittaker, LLC and James A. Whittaker, for relator. Darin C. James, for respondent Community Action Committee of Pike County, Inc.
Jim Petro, Attorney General, and Dennis H. Behm, for respondent Industrial Commission of Ohio.
 IN MANDAMUS {¶ 9} In this original action in mandamus, relator, Cavin J. Lambert, asks the court to issue a writ compelling respondent Industrial Commission of Ohio ("commission") to vacate its order denying compensation for permanent total disability ("PTD") and to issue a new decision without consideration of an independent vocational report.
 {¶ 10} Findings of Fact:
 {¶ 11} 1. In 1994, Cavin J. Lambert ("claimant") was working as an electrician when he sustained an industrial injury, and his workers' compensation claim was allowed for sprains of the lumbosacral and thoracic spine, herniated discs at L4-5 and L5-S1, and aggravation of preexisting lumbar degeneration.
 {¶ 12} 2. Claimant returned to work and, in 1997, he sustained another industrial injury, a foot wound. Claimant again returned to work, and, in 1998, he sustained a third injury, and his claim was allowed for a lumbosacral sprain and trapezius strain.
 {¶ 13} 3. In 2001, claimant filed a PTD application supported by a medical report from Walter G. Broadnax, Jr., M.D. Claimant stated that he completed the 12th grade and could read, write, and perform basic math. He also completed training in industrial electricity and welding, and, while in the Air Force, worked on air frames and was a supervisor. The application indicated that claimant was 50 years old and had worked as an electrician, yard supervisor, and building finisher. On the vocational questionnaire, claimant stated that he could read blueprints and wire electrical panels and transformers. He performed a variety of construction tasks such as installing electrical and plumbing, pouring concrete, framing houses, and building garages. Among other skills, he learned to operate backhoes and forklifts.
 {¶ 14} 4. In June 2002, claimant was examined on behalf of the commission by James Rutherford, M.D., who found that claimant was limited to sedentary work activity, defined as follows:
Sedentary work means exerting up to ten pounds of force occasionally (occasionally: activity * * * exists up to one-third of the time) and/or a negligible amount of force frequently (frequently: activity * * * exists from one-third to two-thirds of the time) to lift, carry, push, pull or otherwise move objects. Sedentary work involves sitting most of the time, but may involve walking or standing for brief periods of time. Jobs are sedentary if walking and standing are required only occasionally * * *.
Dr. Rutherford also opined that claimant had sustained a 19 percent impairment of the body as a whole and could not stoop or bend below knee level, nor do climbing or crawling.
 {¶ 15} 5. In July 2002, an employability assessment was provided on behalf of the commission by Mark A. Pinti, who found that claimant's age of 51 years was not an impediment to returning to work. Mr. Pinti further opined that claimant's high school education was adequate for many entry-level jobs. With respect to work history, Mr. Pinti noted that claimant had performed skilled work as an electrician and yard supervisor, and had performed semi-skilled work in the construction industry. Mr. Pinti concluded that claimant's varied work history showed he had the "ability to adapt to a variety of work settings" and was "capable of acquiring new work skills."
 {¶ 16} Mr. Pinti briefly summarized Dr. Broadnax's report as finding claimant to be permanently and totally disabled. Based on that medical opinion, Mr. Pinti concluded that claimant would have no employment options. However, based on Dr. Rutherford's report, which he summarized briefly as permitting claimant to perform sedentary work, Mr. Pinti concluded that claimant had the following options for employment: "Cashier; Light Assembly; Pari-mutuel Ticket Checker; Order Clerk, Food and Beverage; Addresser; Stuffer."
 {¶ 17} Section D of the vocational report provides a space in which the consultant can report tests of aptitude and academic ability. In that space, Mr. Pinti stated: "N/A." Next, Mr. Pinti opined that the work history showed that claimant had the ability to supervise others, make judgments and decisions, work with people, perform varied duties, do precise work to close tolerances, and repetitive work. In addition, he found that claimant's history of skilled work showed a high-school ability to reason, a high-school aptitude for language, and a math ability at the middle-school level. General learning ability, numerical aptitude, and spatial aptitude were found to be above average, whereas the following were average: verbal aptitude, form perception, clerical perception, motor coordination, finger dexterity and manual dexterity. However, color discrimination and eye/hand/foot coordination were below average.
 {¶ 18} 6. In August 2002, William T. Cody provided a vocational report on claimant's behalf. His testing showed claimant reading at the seventh-grade level and performing math at the fifth-grade level. Based on the tests and other factors, Mr. Cody opined that claimant was not employable in sedentary work.
 {¶ 19} 7. Claimant filed a motion to take Mr. Pinti's deposition, which was denied.
 {¶ 20} 8. In January 2003, a hearing officer denied PTD compensation:
Claimant was examined on behalf of the Industrial Commission by Dr. Rutherford, who stated that claimant is 19% permanently and partially impaired and retains the capacity to perform sedentary work. Mr. Pinti performed an Employability Assessment on behalf of the Industrial Commission and, taking into account the restrictions/residual functional capacities of Dr. Rutherford, identified a number of jobs claimant could still perform. These reports are found to be persuasive and their findings are adopted as those of the SHO. In addition to the listed jobs, the SHO finds also that claimant can perform the work of telemarketer and security system monitor and still observe the sedentary restrictions of Dr. Rutherford.
Claimant's age of 52 is held to be an asset in that it permits him to offer over 10 years of working life to a prospective employer. His high school graduate educational level and his further training in electrical work are also held to be assets in that it is sufficient academic preparation for the performance of the jobs listed. Finally claimant's work experiences, while not leaving him with any directly transferable skills, are nevertheless still held to be assets. Most particularly the SHO cites claimant's experiences as an electrician in the construction industry and as an air frame mechanic in the USAF. These jobs are held to be skilled trades and indicate both a high level of manual dexterity as well as the ability to learn complicated technical tasks and procedures. These demonstrated characteristics and traits would be considered as evidence by potential employers that claimant could successfully learn and perform even complicated new tasks, especially those involving manual dexterity performed in a sitting position (such as light assembly, etc.).
Inasmuch as claimant has been found to retain the capacity for performing sedentary work, and that the additional consideration of the administrative factors do not adversely affect his ability to perform such work, claimant is found NOT to be removed from all sustained remunerative employment; and is consequently held not to be permanently and totally disabled.
 {¶ 21} Conclusions of Law:
 {¶ 22} Claimant states a single issue: "Whether the Industrial Commission of Ohio abused its discretion by its order denying relator's application for permanent and total disability compensation benefits." He contends that the PTD order was not supported by evidence in the claim file and that Mr. Pinti's report must be removed from evidentiary consideration. For the reasons set forth below, the magistrate disagrees and finds no abuse of discretion.
 {¶ 23} First, the commission was within its discretion to deny PTD compensation. The commission's reliance on Dr. Rutherford's medical opinions was within its discretion as the sole finder of fact. State ex rel. Burley v. Coil Packing, Inc.
(1987), 31 Ohio St.3d 18. With respect to nonmedical/vocational factors, the commission was plainly within its discretion to treat claimant's age as an asset rather than a hindrance. Stateex rel. Miller v. Indus. Comm. (1996), 76 Ohio St.3d 590; Stateex rel. Ellis v. McGraw Edison Co. (1993), 66 Ohio St.3d 92.
 {¶ 24} The commission's assessment of claimant's work history was also within its discretion. See State ex rel. Ewart v.Indus. Comm. (1996), 76 Ohio St.3d 139. Here, claimant's work history included skilled work as an electrician and yard supervisor as well as semi-skilled work in construction. On his questionnaire, claimant had described specific skills he had developed, such as reading blueprints and wiring panels. He had also shown the ability to learn a variety of construction skills such as plumbing, pouring concrete, framing houses, building garages, and operating equipment. The commission did not abuse its discretion in concluding that claimant had demonstrated adaptability and an ability to learn many new skills. Thus, even if the skills are not directly transferable to sedentary work, the work history may be viewed as showing the ability to learn complicated tasks. Ewart, supra.
 {¶ 25} In addition, the commission was within its discretion to rely on claimant's high school education and successful vocational training as advantages in the job market. See Ellis,
supra (ruling that the commission may deem a high school diploma to be a vocational asset even where a claimant's academic skills are at the grade-school level). Further, claimant stated that he could read, write, and perform basic math, and the commission may rely on a claimant's ability to read, write and perform basic math — even if not well — as support for the conclusion that claimant can perform an entry-level position. State ex rel. Westv. Indus. Comm. (1996), 74 Ohio St.3d 354.
 {¶ 26} With respect to Mr. Pinti's report, claimant contends that it was incomplete and inconsistent. Claimant charges that Mr. Pinti failed to complete Section D, failed to list all the physical restrictions imposed by Dr. Rutherford, and found that claimant could perform jobs that claimant in fact cannot perform. First, the magistrate finds no defect with respect to Section D. Under the heading of that section, Mr. Pinti stated "N/A," essentially indicating that there were no applicable findings to report, which was a reasonable statement. There is no evidence that Mr. Pinti did testing that he failed to report, and the magistrate is aware of no legal requirement that a vocational consultant's evaluation must be excluded as a matter of law where he did not administer any tests. As for Mr. Cody's test results, those tests were not administered until after Mr. Pinti had already submitted his report, so Mr. Pinti could not be expected to take note of them.
 {¶ 27} With regard to Mr. Pinti's list of job options based on Dr. Rutherford's medical opinion, claimant argues that Mr. Pinti's description of the medical report proves that Mr. Pinti was unaware of all the restrictions imposed. Claimant argues that the report must be excluded because Mr. Pinti's summary stated only that Dr. Rutherford found claimant capable of sedentary work.
 {¶ 28} The magistrate finds no defect that would require the court to grant a writ to remove the vocational report from evidentiary consideration. First, the definition of sedentary employment in Dr. Rutherford's report, which is taken from Ohio Adm. Code 4121-3-34(B)(2), focuses solely on the worker's ability to lift, carry, push and pull different weights and the ability to sit, stand, and walk. The definition of sedentary employment does not mention bending, stooping, crawling, etc. Thus, some sedentary jobs may require occasionally bending to knee level or stooping and some may not. In other words, not all sedentary work will require the worker to perform bending to knee level, stooping, etc. In short, when Mr. Pinti summarized Dr. Rutherford's report as permitting sedentary work, his statement was accurate. Nothing in his description was inconsistent with any of Dr. Rutherford's specific findings.
 {¶ 29} Although Mr. Pinti did not list the specific restrictions on bending, crawling, etc., claimant cites no law or precedent that requires a vocational evaluator to list every restriction identified in a physician's report, and the magistrate is aware of no authority for that proposition. See, generally, State ex rel. Wrobleski v. Huntington Bancshares,Inc., Franklin App. No. 02AP-654, 2003-Ohio-1111, at ¶ 64;State ex rel. Schottenstein Stores Corp. v. Indus. Comm. (Oct. 25, 2000), Franklin App. No. 00AP-346 (Magistrate's Decision), adopted January 18, 2001 (Memorandum Decision). A vocational evaluator may briefly sum up a medical report, and it would be fair to summarize Dr. Rutherford's opinion as permitting sedentary work.
 {¶ 30} Further, claimant has not established that the job options listed by Mr. Pinti are patently inconsistent with Dr. Rutherford's restrictions. That is, claimant has failed to prove that no vocational evaluator could reasonably conclude that the listed jobs can be performed by a sedentary worker who is limited to lifting ten pounds occasionally and lacks the ability to crawl, bend to knee level, etc. For example, claimant contends that he cannot work as a cashier because some cashiers must stand while working and must lift more than 10 pounds. Claimant fails to recognize, however, that not all cashiers must stand or lift more than 10 pounds. While "Cashier II" in the Dictionary of Occupational Titles ("DOT") may require exertion at the light level, Mr. Pinti never specified that claimant could perform the duties of "Cashier II."
 {¶ 31} Similarly, claimant contends that he cannot perform assembly work because numerous assembly jobs require standing and/or lifting, but, again, not all assembly work requires the worker to stand or to lift more than 10 pounds, according to the DOT. Thus, claimant has not proven that Mr. Pinti's report must be removed from evidentiary consideration based on the list of job options. See, generally, State ex rel. Mock v. Indus.Comm., Franklin App. No. 02AP-1091, 2003-Ohio-3116, at ¶ 22-24.
 {¶ 32} Claimant also argues that some of the job options listed by Mr. Pinti are beyond claimant's vocational ability as a matter of law, thus requiring the court to remove the report from evidentiary consideration. The magistrate again concludes that claimant had not met his burden of proof. For example, claimant argues that the job of "Cashier I" is skilled work and that the claimant is unable to perform skilled work. However, given the evidence that claimant had previously learned to perform skilled and semi-skilled jobs, the court cannot conclude as a matter of law that no reasonable vocational expert would opine that claimant can learn to perform skilled cashier work or skilled assembly work. In sum, Mr. Pinti's opinions do not contradict the medical report on which the commission relied nor the vocational evidence.
 {¶ 33} Likewise, the independent evaluation by the hearing officer that claimant could do the semi-skilled work of a telemarketer was supported by some evidence. Claimant had been a supervisor and had learned to perform a variety of skilled and semi-skilled duties, and Mr. Pinti opined that claimant worked well with people, was adaptable, and showed ability to learn a variety of skills. In summary, the magistrate finds no abuse of discretion in the commission's order denying PTD compensation.
 {¶ 34} Next, the magistrate turns to the order denying leave to take the deposition of Mr. Pinti. Although claimant does not include this order when listing the issues in mandamus, he included a brief contention at the end of his brief to the effect that the defects in the Pinti report were so significant that claimant was entitled as a matter of law to take Mr. Pinti's deposition.
 {¶ 35} The magistrate disagrees. First, claimant has not shown a significant defect in the Pinti report. More importantly, the magistrate concludes that, to the extent that there are weaknesses, flaws, or a disparity between the opinions of the vocational experts, the hearing itself was an equally reasonable option for resolving questions. The hearing provided a fair opportunity for the parties and the hearing officer to address issues such as whether the vocational opinion was consistent with the medical and vocational evidence, whether the lack of testing reduced the reliability of the expert's opinion, and other matters regarding the credibility and weight that should be given to the opinion, if any. See State ex rel. Cox v. Greyhound FoodMgt., Inc., 95 Ohio St.3d 353, 2002-Ohio-2335; State ex rel.Pate v. Indus. Comm., 97 Ohio St.3d 89, 2002-Ohio-5444.
 {¶ 36} Based on the foregoing, the magistrate concludes that claimant has not proved a failure by the commission to perform a legal duty, and accordingly recommends that the court deny the requested writ of mandamus.
 /s/ P.A. Davidson
P.A. DAVIDSON MAGISTRATE
[1] This rule was relaxed in State ex rel. Lampkins v. DaytonMalleable, Inc. (1989), 45 Ohio St.3d 14, wherein the Supreme Court of Ohio held that a non-examining physician must at least implicitly accept the findings of the examining physicians by acknowledging that the reports of the examining physicians have been reviewed.